UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JULIE V. MOSES,                     )
                                    )
       Plaintiff,                   )
                                    )
       v.                           )      Civil Action No. 10-0802 (ESH)
                                    )
DISTRICT OF COLUMBIA,               )
                                    )
       Defendant.                   )
_____)

## MEMORANDUM OPINION

Plaintiff Julie Moses, mother of the deceased Andre P. Rudder, has sued the District of Columbia alleging that her son's death was caused by defendant's inadequate provision of emergency medical treatment. Plaintiff's claims include: (1) wrongful death, (2) survival action, (3) negligence, (4) negligent training and supervision, and (5) a 42 U.S.C. § 1983 action for the violation of Mr. Rudder's Fifth Amendment Due Process rights. Defendant has moved to dismiss the complaint for failure to state a claim. For the reasons explained herein, the Court grants defendant's motion.

## BACKGROUND

Plaintiff alleges the following facts. On the evening of May 16, 2009, Andre P. Rudder drove to a District of Columbia Fire and Emergency Medical Services (FEMS) station seeking medical attention. (Compl. ¶ 8.) After parking his vehicle, Mr. Rudder walked into the station clutching his chest and sweating profusely. He informed FEMS personnel that he was experiencing chest pains and difficulty breathing. A FEMS employee called for an ambulance because the station lacked standard emergency equipment. (*Id.* ¶¶ 9-10.) Thereafter, the FEMS

employee and her co-worker, both of whom were either licensed paramedics or Emergency Medical Technicians (EMTs), did not monitor, assist, or render any form of medical aid to Mr. Rudder. (*Id.* ¶¶ 11, 19.) Nor did they attempt to obtain emergency equipment from the FEMS Apparatus Division that abutted the station and contained an external heart defibrillator. (*Id.* ¶¶ 17-18.) Instead, they returned Mr. Rudder to his car and left him unattended to await the ambulance. (*Id.* ¶¶ 13, 20.) The ambulance arrived 10 to 20 minutes after being called, but by that time, Mr. Rudder had no pulse. He was taken to George Washington Hospital, where he was pronounced dead as a result of hypertensive and atherosclerotic heart disease. Mr. Rudder was thirty-six years old. (*Id.* ¶¶ 15, 21-22.)

Plaintiff, individually and as the personal representative of Mr. Rudder's estate, filed a complaint against the District of Columbia and FEMS alleging six causes of action. Five of the counts were brought under state tort law and allege that defendant's negligence caused Mr. Rudder's death. (Compl. ¶¶ 27-28, 34-36, 53-54, 71-73, 78-80.) Plaintiff's remaining count, brought under 42 U.S.C. § 1983, alleges that defendant violated Mr. Rudder's Fifth Amendment Due Process rights by inadequately caring for him, and that this violation occurred pursuant to defendant's policy or custom of inadequate training of its EMTs and insufficiently supplying its stations with emergency equipment. (*Id.* ¶¶ 38-41.)

Defendants have moved to dismiss plaintiff's complaint for failure to state a claim. (Mem. of P. & A. in Supp. of Def.'s Mot. at 1.) Plaintiff voluntarily agreed to dismiss her medical malpractice claim and FEMS as a defendant, but otherwise she opposes defendant's motion.[1] (Pl.'s Opp'n. at 12, 20).

---

[1] Plaintiff asks, in the alternative, for leave to amend her complaint. (Pl.'s Opp'n. at 20.) The Court denies this request as "[a] bare request in an opposition to a motion to dismiss-without any indication of the particular grounds on which amendment is sought-does not constitute a motion

## ANALYSIS

### I. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). Rule 8(a)(2) requires pleadings to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not necessary, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and when ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

However, a complaint must provide "more than labels and conclusions;" a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). It must plead factual content from which a

---

to amend." *City of Harper Woods Employees' Ret. Sys. V. Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009) (citations omitted). Moreover, plaintiff failed to follow the proper procedures for making such a request. Federal procedure requires motions to "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). To satisfy this requirement when seeking leave to amend, "a copy of the amendment should be submitted with the motion so that the court and the adverse party know the precise nature of the pleading changes being proposed." 6 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> §1485 (3d ed. 2010); *see Wolgin v. Simon*, 722 F.2d 389, 394 (8th Cir. 1984) (denying request to amend complaint where request did not contain proposed amendments). Similarly, this Court's local rules mandate that "[a] motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended." LCvR7(i). Plaintiff here failed to submit the proposed amendments, and therefore the Court concludes that plaintiff has failed to properly move for leave to amend the complaint.

court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. 42 U.S.C. § 1983 CLAIM

42 U.S.C. § 1983 provides civil and equitable remedies to persons whose constitutional or federal rights have been violated by another acting under the color of law. *See People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 424-25 (D.C. Cir. 2005); *Butera v. District of Columbia*, 235 F.3d 637, 645 (D.C. Cir. 2001). Thus, in order to state a claim under § 1983, a plaintiff must, as an initial matter, sufficiently plead a violation of a federal or constitutional right. Here, plaintiff alleges that defendant's inadequate provision of emergency care caused Mr. Rudder's death, thereby violating Mr. Rudder's rights under the Due Process Clause of the Fifth Amendment, which provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

The Due Process Clause encompasses both a substantive and a procedural component. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("The Due Process Clause contains a substantive component . . . [and] a guarantee of fair procedure."). Substantive due process prohibits "arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Thus, state action that wrongfully deprives a person of life, liberty, or property violates substantive due process. *Id.* By contrast, a procedural due process violation only occurs when such interests are deprived *without due process of law*. *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). Plaintiff's complaint does not specify whether plaintiff is asserting a substantive or a procedural due process violation. Under either theory plaintiff has failed to state a claim.

4

### A. Substantive Due Process

Because Mr. Rudder was killed by his heart disease, and not by defendant, defendant can only have committed a substantive due process violation if it had a duty to aid Mr. Rudder. *See Smith v. District of Columbia*, 413 F.3d 86, 93 (D.C. Cir. 2005). It is well established that a State has no general duty to aid an individual, even when doing so would protect life. *Turner v. District of Columbia*, 2006 WL 566121, at *4 (D.D.C. Mar. 7, 2006). The Supreme Court has explained that:

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989); *see also Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) ("As a general matter, a State is under no constitutional duty to provide substantive services for those within its border."). In *DeShaney*, the mother of a child who was physically abused by his father brought suit against the county department of social services and several of its social workers who knew of the abuse but did not remove the child from the father's custody. The child was eventually beaten so severely that he suffered permanent brain damage. 489 U.S. at 191. The Court rejected the mother's argument that the State's failure to protect the child deprived him of his substantive due process right to liberty. *Id.* Noting that the Due Process Clause generally conferred "no affirmative right to governmental aid," the Court concluded that the State was not liable for injuries that could have been averted had it chosen to provide such aid. *Id.* at 196-97. The Court also rejected the argument that the State, by voluntarily undertaking to protect the child, had assumed a constitutional duty to protect him adequately and competently. *Id.* at 197-98. The Court noted

that while such circumstances might create a duty under state tort law, they did not create a constitutional duty. *Id.* at 202 ("[T]he Due Process Clause . . . does not transform every tort committed by a state actor into a constitutional violation.").

Under *DeShaney*, defendant's failure to adequately aid Mr. Rudder does not constitute a due process violation as defendant had no constitutional duty to provide Mr. Rudder any aid whatsoever. Furthermore, even if defendant arguably undertook to rescue Mr. Rudder by calling an ambulance, defendant did not assume a duty to rescue him competently. The only issue to be resolved is whether this case falls into one of the exceptions to *DeShaney's* general rule.

The Court in *DeShaney* recognized that in "certain limited circumstances" States have a constitutional duty to care for particular individuals. *Id.* at 198. It explained that where the State "takes a person into its custody and holds him there against his will," it assumes "some responsibility for his safety and general well-being." *Id.* at 199-200. This is because the State has, by affirmative act, limited the individual's ability to care for himself. The types of State custody that have traditionally triggered a duty to provide care include incarceration, involuntary institutionalization, and police custody.[2] Importantly, it not sufficient that the State is aware of a person's need or even that it has offered to help. *Id*.

In this Circuit, the state custody exception is narrowly construed. *Butera*, 235 F.3d at 648. The case of *Harris v. District of Columbia*, 932 F.2d 10 (D.C. Cir. 1991), is illustrative. In *Harris*, the estate of an individual who had overdosed on drugs alleged that the police who

---

[2] *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (Eighth Amendment requires State to provide medical care to prison inmates); *Youngberg*, 457 U.S. at 317-19 (substantive due process requires State to provide involuntarily committed mental patients reasonably safe conditions); *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983) (Due Process Clause requires State to provide medical care to suspects in police custody who were injured while being apprehended by police).

encountered and restrained him violated his due process rights by failing to obtain medical care in a timely and competent manner. Specifically, the police, who had shackled the person's arms and legs and locked him in a police wagon, delayed taking him to a hospital, neglected to complete paperwork necessary for the hospital to admit him, and only then took him to an emergency room, where he subsequently died. 932 F.2d at 11-12.

Despite the fact that they had physically restrained the individual, the Court found that the police did not have a clearly established duty to provide him with medical care because "he had not been formally committed, either by conviction, involuntary commitment, or arrest, to the charge of the District." *Id.* at 15. The Court explained that even though the individual was in police custody, his inability to care for himself was not the result of police action, but because of his drug ingestion. Thus, the custody exception did not obligate the police to care for the individual. *Butera*, 235 F.3d at 648 (citing *Harris*, 932 F.2d at 13-16).

The case at hand is a far cry from the situation in *Harris*, and even further from the types of custody traditionally recognized as triggering a constitutional duty to render aid. Plaintiff does not allege that defendant restrained Mr. Rudder in any way so as to make him unable to care for himself. In fact, plaintiff alleges just the opposite: that Mr. Rudder voluntarily came to defendant's station and that after calling an ambulance, defendant left Mr. Rudder alone in his car, free to go if he wished. And, as in *Harris*, Mr. Rudder's inability to care for himself was not caused by defendant, but by Mr. Rudder's heart disease. 932 F.2d at 14. Based on these binding precedents, the state custody exception cannot be invoked by plaintiff to salvage her § 1983 claim.

The second exception to *DeShaney*'s general rule arises "where the state creates a dangerous situation or renders citizens more vulnerable to danger." *Butera*, 235 F.3d at 648-49

7

(quoting *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.1993)). In *Butera*, this Circuit officially recognized the "state endangerment" exception to *DeShaney* and outlined the contours of the doctrine. In order for the District of Columbia to be liable under this exception, a plaintiff must demonstrate that (1) the District affirmatively acted to increase or create the danger that ultimately resulted in harm to the plaintiff, and (2) the District's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 651 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)); *Briscoe v. Potter*, 355 F. Supp. 2d 30, 43 (D.D.C. 2004).

The Court assumes *arguendo* that plaintiff has sufficiently pled facts supporting the second prong of this test. However, there is no claim that defendant affirmatively acted to increase or create the danger that harmed Mr. Rudder. It is clear that defendant did not create or worsen Mr. Rudder's heart disease. Nor does plaintiff allege that defendant's actions prevented Mr. Rudder from seeking aid elsewhere or otherwise protecting himself.

This is not, then, like the situation in *Briscoe*, where United States Postal Service employees alleged that their supervisors told them that their workplace was safe, despite knowing that it was contaminated with anthrax. *Briscoe*, 355 F. Supp. 2d at 31. There, the Court found that although the defendant supervisors did not create the dangerous work environment, their intentional misrepresentations prevented plaintiffs from acting to protect themselves, thereby satisfying the first prong of the state endangerment test. *Id.* at 44-45. Here, by contrast, defendant apparently made no misrepresentations to Mr. Rudder that prevented him from protecting himself. According to plaintiff, defendant only represented to Mr. Rudder that it would call an ambulance, which it did. (Compl. ¶ 10.) It cannot be said that defendant placed Mr. Rudder in greater danger than he would have been in had defendant done nothing at all.

8

The *Butera* Court emphasized that, "[n]o constitutional liability exists where the State actors 'had no hand in creating a danger but [simply] 'stood by and did nothing when suspicious circumstances dictated a more active role for them." 235 F.3d at 650 (citations omitted) (brackets in original). Here, plaintiff alleges nothing more than that defendant stood by and did nothing while Mr. Rudder died. Tragic as that may be, it is not a substantive due process violation.[3]

### B. Procedural Due Process

To the extent that plaintiff alleges that Mr. Rudder had a property interest in defendant's emergency services, and that those services were denied without due process of law, this claim also fails as a matter of law. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Furthermore, such entitlements are not created by the Constitution; instead, they are created by "existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. Finally, a benefit does not give rise to a

---

[3] Plaintiff may be inclined to argue that defendant, by undertaking to aid Mr. Rudder, increased the danger to him by deterring others from coming to his rescue. This argument, made in the context of the state custody exception, was viewed skeptically by the Court in *Harris*, which noted that "it is no longer the 'deprivation of liberty' which causes the injury . . . so much as the 'deprivation of visibility' or the appearance of helplessness." *Harris*, 932 F.2d at 15. The Court warned that such a doctrine would subject ambulances drivers to constitutional duties every time they picked up a patient, and concluded that it was "not at all confident" that the Supreme Court or other federal courts would extend the custody exception to encompass this kind of situation. *Id.* Moreover, plaintiff here does not plead facts suggesting that defendant deterred other rescuers. Unlike *Harris*, where police had locked an individual in a police wagon, defendant did not remove Mr. Rudder from public sight; to the contrary, he was returned to his car. And because he was left there unattended, it cannot be said that passersby withheld aid, believing that Mr. Rudder was already being adequately assisted.

property interest if government officials may grant or deny it in their discretion, *Town of Castle Rock*, 545 U.S. at 756, or if it runs to the public generally rather than to particular individuals. *See id.* at 765 (noting that even mandatory government services do not necessarily create property interests because they may "serve various legitimate ends other than the conferral of a benefit on a specific class of people").

It is illustrative to contrast this case with *Castle Rock*, where plaintiff had obtained a restraining order against her husband, which he violated by taking plaintiff's three children from their home when they were playing outside. Over the course of several hours plaintiff made numerous calls to the police requesting that they enforce the restraining order. The police, however, repeatedly refused to take action, and soon thereafter, the three children were found dead, having been killed by plaintiff's husband. *Id.* at 751-54. Plaintiff alleged that her due process rights were violated because she had a property interest in having the restraining order enforced, of which she was deprived without adequate process. *Id.* at 754.

A Colorado statute appeared to make enforcement of the restraining order mandatory. The statute stated that a "peace officer shall use every reasonable means to enforce a restraining order," and that "a peace officer shall arrest, or if arrest would be impractical under the circumstances, seek a warrant for the arrest of a restrained person" when there is probable cause that the restrained person violated a provision of the restraining order. *Id.* at 759 (quoting Colo.Rev.Stat. § 18-6-803.5(3) (1999)).

Despite this apparently mandatory language, the Supreme Court found that enforcement was not truly mandatory in light of the "well-established tradition of police discretion" that has "long coexisted with apparently mandatory arrest statutes." *Id.* at 760. Additionally, the Court noted that the plaintiff did not specify the precise means of enforcement that the statute

10

mandated, stating that "such indeterminacy is not the hallmark of a duty that is mandatory." *Id.* at 763. Finally, the Court found that even if the statute was read as mandating enforcement, it did not entitle the *plaintiff* to enforcement because, *inter alia*, one cannot "safely be entitled to something when the identity of the alleged entitlement is vague," and because the statute itself did not indicate that the bearer of a protective order was entitled to enforcement of it. *Id.* at 763-66.

Here, the only statute that could arguably create a property interest is D.C. Code §5-401(b), which states that FEMS "shall provide pre-hospital medical care and transport within the geographical boundaries of the District of Columbia. Major changes in the manner the Department provides emergency medical services shall be approved by resolution of the Council." D.C. Code § 5-401(b). Under this statute, plaintiff's alleged property interest is far more amorphous than the one asserted in *Castle Rock*. The statute in *Castle Rock* at least identified some state actions to which the plaintiff could plausibly have been entitled, including arrest of the violator, the seeking of an arrest warrant, and the use of "every reasonable means" to enforce the order. *Id.* at 759. Nonetheless, the Supreme Court found this insufficient, and by definition, plaintiff's alleged entitlement to "pre-hospital medical care" is even more so, since the D.C. statute provides no meaningful definition of "pre-hospital medical care." Though plaintiff points to other jurisdictions that have defined the term to include stabilization, airway clearance, cardiopulmonary resuscitation, and the like (Pl.'s Opp'n. at 15.), "[i]f [plaintiff] was given a statutory entitlement, we would expect to see some indication of that *in the statute itself*." *Castle Rock*, 545 U.S. at 765 (emphasis added).

Given that plaintiff's alleged entitlement is even more indeterminate than the one asserted in *Castle Rock*, it cannot be said that defendant had a mandatory duty to provide pre-hospitalization medical care, or that plaintiff had a claim of entitlement to it.

Finally, nothing in the statue indicates that it was intended to confer an entitlement to a specific group of individuals. Whereas the *Castle Rock* statue referred to "protected persons" (though not in connection with a right of enforcement), *id.*, the D.C. statute does not even identify a class of beneficiaries, much less grant them an enforceable right to medical care. Read as a whole, the statute merely identifies the nature and geography of the services to be rendered by FEMS.

The Court therefore concludes that plaintiff has not pled a property interest that could form the basis of a procedural due process claim. And, because she has not pled a substantive due process claim, there is no basis for suit under 42 U.S.C. § 1983.

### III. State Tort Law Claims

This Court was authorized to hear plaintiff's state law claims under pendent jurisdiction. (Compl. ¶ 1.) Given that the Court is dismissing plaintiff's only federal law claim, it is proper to dismiss plaintiff's state law claims without prejudice. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine- judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.").

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. This Memorandum Opinion is accompanied by a separate order.

>                    /s/
> ELLEN SEGAL HUVELLE
> United States District Judge

DATE: September 28, 2010